UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ADORNO F. PICCININI,

    Debtor,
_____/

CHARLES J. TAUNT, TRUSTEE,

    Appellant,

                                               Case Number 09-cv-13623
                                               Bnkr. Case No. 08-57865
v.                                              Hon. George Caram Steeh

SUNIL AGRAWAL and NOVA
CONSULTANTS, INC.,

    Appellees.
_____/

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDERS OF JULY 13, 2009 AND SEPTEMBER 3, 2009 ON APPEAL (#1)

Charles J. Taunt (the "Trustee") appeals two orders issued by Bankruptcy Judge Steven W. Rhodes denying (1) the Trustee's motion for summary judgment on his claims for avoidance of preferential transfer, and (2) dismissing the Trustee's claims under the Michigan Uniform Fraudulent Transfer Act, for breach of contract, and for avoidance of preferential transfer following trial.[1] For the reasons set forth below, the challenged orders are AFFIRMED.

---

[1] The court issued the first order on July 13, 2009, denying the Trustee summary judgment on the Trustee's claims for avoidance of preferential transfer and declaratory judgment. On September 3, 2009, the bankruptcy court dismissed the Trustee's claims of fraudulent transfer, pursuant to MCL § 566.34 and 566.35; avoidance of preferential transfer, pursuant to 11 U.S.C. § 547; recovery of avoided transfer, pursuant to 11 U.S.C. § 550; and two counts of breach of contract.

## I. Background

### A. Relevant Facts

Central to this dispute is a Novi real estate development company called KAAD, LLC ("KAAD") which was equally owned by Adorno Piccinini ("Debtor") and his ex-wife, Karen Mattingly. On March 18, 2008, Debtor sold his share in KAAD to Appellee Sunil Agrawal ("Agrawal").[2] More than 90 days later on July 24, 2008, Debtor filed a bankruptcy petition under Chapter 7 of the United State Bankruptcy Code.

The sale to Agrawal consisted of three parts. First, Debtor sold his share in KAAD for $487,000 through a "Transfer Agreement." Second, an "Employment Agreement" (the "Employment Agreement") between Debtor and Nova Consultants called for Debtor to continue working on KAAD projects. In return, Debtor was to receive $72,000 in bi-weekly installments over a two-year period. Third, an "Addendum to Transfer and Assignment Mutual Release" (the "Addendum") provided additional consideration for the KAAD transfer. Under the Addendum, Debtor was to receive the following:

- Agrawal agreed to buy Debtor's Novi home; if successful, Debtor had the right to re-purchase the property from Agrawal for the price paid by Agrawal up to $670,000, minus a $140,000 credit, ie. the housing allowance

- if Agrawal was unsuccessful in purchasing debtor's Novi home, Agrawal agreed to pay $140,000 for a replacement home[3]

- Agrawal agreed to pay Debtor an additional $36,000 in twelve monthly installments as living expenses

- the Debtor could re-acquire KAAD if he paid Agrawal the amount he owed him

---

[2] Agrawal later purchased Mattingly's interest in KAAD.

[3] Agrawal did not purchase Debtor's home and did not give him $140,000 for a replacement home.

2

These agreements released Debtor from his obligations to Agrawal, obligations that Agrawal claims amounted to almost $2 million accumulating over roughly 15 years. The Trustee claims these loans demonstrate a personal, insider relationship between Debtor and Agrawal, indicated by the fact that many of the loans did not include repayment terms and were paid at Debtor's direction. The Trustee cites two specific loans as examples of the closeness of the relationship.

The first of these loans is an August 21, 2007 loan that allowed Debtor to us his Breitlng Crosswind watch as collateral for a $2,500 loan. The second is a September 28, 2007 transaction to help Debtor pay his legal bills. Debtor sold Agrawal his 2002 Saleen Mustang in exchange for the forgiveness of a prior $15,000 loan (plus interest) and a cash payment of $15,000. The summer after the sale, Agrawal allowed Debtor to use the Saleen Mustang for a weekend to participate in the Woodward Dream Cruise.

In addition, Agrawal invested in several of Debtor's ventures. Agrawal and Debtor were partners in Novi Development Associates, with Debtor exercising control over Novi Development Associates. The two also maintained an interest in the Brooktown Commercial Development in Novi; Debtor and his wife owned two-thirds of this project and Agrawal owned one-third. Again, Debtor served as managing partner. Finally, Agrawal was a creditor in a development called Southtown that Debtor owned. The KAAD purchase did not include the Southtown and Brooktown developments.

**B.  Procedural Facts**

The Trustee filed his Second Amended Complaint against Agrawal and Nova Consulting on December 12, 2008, seeking the following claims:

(1) Avoidance of Fraudulent Transfer under MCL § 566.34 and 566.35; (2)

3

Avoidance of Preferential Transfer, pursuant to 11 U.S.C. § 547; (3) Recovery of Avoided Transfer, pursuant to 11 U.S.C. § 550; (4) Declaratory Judgment; (5) Turnover of Property to Estate, pursuant to 11 U.S.C. § 542; (6) Avoidance of Fraudulent Transfers, pursuant to 11 U.S.C. § 548 (personal property); (7) Avoidance of Fraudulent Transfers, pursuant to 11 U.S.C. § 547 (personal property); (8) Recovery of Avoided Transfers, pursuant to 11 U.S.C. § 550 (personal property; (9) Breach of Contract (employment agreement); and (10) Breach of Contract (Addendum).

On June 11, 2009, the Trustee moved for partial summary judgment on the first three claims. On July 13, 2009 Judge Rhodes heard arguments and ruled from the bench, stating:

> The court must conclude that on the issue of whether the defendant was an insider for purposes of resolving the plaintiff's claims, there are genuine issues of material fact that preclude granting summary judgment at this time.

Transcript, July 13, 2009 at 17-18. On July 30, 2009, the Bankruptcy Court held a one-day trial. After the Trustee rested his case, Agrawal and Nova Consulting made oral motions for dismissal of the Trustee's claims, pursuant to Fed. R. Civ. P. 52. On September 3, 2009, Judge Rhodes granted their motion for dismissal of all counts.

On October 26, 2009, the Trustee appealed the rulings. The matter is fully briefed. Oral arguments were heard on December 22, 2009.

## II. Standard of Review

A district court applies a clearly erroneous standard of review to bankruptcy court findings of fact, and plenary <u>de novo</u> review as to questions of law. See <u>In re Charfoos</u>, 979 F.2d 390, 392 (6th Cir. 1992). The district court may "affirm, modify, or reverse a bankruptcy judge's order, or decree or remand with instructions for further proceedings." Bankruptcy Rule 8013.

## III. Analysis

4

A.  **Non-Statutory Insider Status**

   1.  **The Bankruptcy Court's decision to deny summary judgment.**

The Trustee argues that the Bankruptcy Court erred in denying his motion for summary judgment of his claims because there is no genuine issue of material fact as to whether Agrawal was an insider of Debtor. Thus, the transactions between Agrawal and Debtor should be avoided. This court disagrees.

In order to avoid the transactions, the Trustee must meet five conditions as set forth in 11 U.S.C. § 547(b): (1) the transfer was to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before the transfer was made; (3) made while the debtor was insolvent; (4) made between 90 days and one year before the filing date of the bankruptcy petition, if the creditor was an insider at that the time of the transfer; and (5) the transaction will allow the creditor to receive more assets than if the case were in Chapter 7. At issue is whether the creditor was an insider at the time of the transfer.

Both parties agree that Agrawal is not a statutory insider. The courts, however, have established a catch-all category of "non-statutory insiders." In re U.S. Medical, Inc., 531 F.3d 1272, 1276 (10th Cir. 2008). The Sixth Circuit case law on non-statutory insider status is scarce, and the court must consider case law decided outside this district and circuit. Most recently, the Third Circuit in In re Winstar Communications, Inc., 554 F.3d 382 (3rd Cir. 2009) elaborated on the standard for determining whether a creditor may be treated as a "non-statutory insider." A showing of actual control over the debtor is not necessary; instead, the court asks "whether there is a close relationship [between debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length." Id. at 396-97 (citations omitted); see also S. Rep. No. 95-989, at 25

(1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5810 ("An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at [arm's] length with the debtor." Arm's length is traditionally defined as any transaction negotiated in good faith in the ordinary course of business by parties, each with independent interests and acting in their own best interests. In re U.S. Medical, Inc., 531 F.3d at 1277, n.4.

Agrawal asserts that in order to label a creditor as an insider, the creditor must exercise actual managerial control over Debtor's day-to-day operations. Appellee's Response Br. at 21-22. The Trustee answers that the inquiry is limited to whether there is a "sufficiently close relationship" between Agrawal and Debtor. Both fall short of the standard set forth in In re Winstar Communications.

The first step in the analysis determines whether Agrawal and Debtor were in a close relationship. In re Winstar Communications, Inc., 554 F.3d at 396-97. Agrawal concedes that the underlying facts "may be sufficient to put the court on notice to "closely scrutinize" the transaction between himself and Debtor. Appellee's Response Br. at 33. The personal nature of several, unsecured loans and Debtor's ability to use personal belongings to secure loans and credit from Agrawal indicate a closeness between Agrawal and Debtor that warrants further examination of their relationship.

The second step questions whether KAAD was sold in an arm's length deal. The Bankruptcy Court noted there is no evidence to indicate that Agrawal dictated to Debtor what decision Debtor should make. Agrawal did not have day-to-day control or input in Debtor's affairs and decisions. See e.g. In re Eccles, 393 B.R. 845, 856 (W.D, Mo

6

Bankruptcy 2008) ("The fact that a creditor and a debtor are friends is insufficient to transform the creditor into an insider.") By all indications, Debtor remained free to make decisions that were in his own best interests.

Further, Agrawal acquired KAAD at a significant price and with the risk that KAAD and KAAD-associated ventures would fail. The price included foregoing a substantial portion of the debt owed to Agrawal, and offering Debtor employment and housing. Agrawal acted as an aggressive creditor, pursuing at least a partial return on the loans he made to Debtor. Employing Debtor was a sensible and predictable feature of the transaction since Debtor had first-hand knowledge of KAAD's affairs and practices. It is safe to assume that Agrawal did not purchase KAAD with the intent to see it fail. Thus, employing Debtor and supplying his housing for a limited amount of time was an integral part of the deal which Agrawal hoped would facilitate his efforts to transform KAAD into a profitable venture. For his part, Debtor gained by acquiring benefits that were unlikely to come from other creditors or the Bankruptcy Court.

In weighing the evidence in the light most favorable to the non-moving party, see A Dickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970), prior to trial there was a genuine issue of material fact concerning whether the KAAD sale was conducted at arm's length. The consideration/exchanges that are part of this transaction do not compel a finding that Agrawal received preferential terms. At best, the fact finder would have to consider the evidence on both sides of the question, before reaching such a conclusion. From this court's perspective, both sides benefitted from the transaction. Agrawal obtained some return on his loans, and Debtor received cancellation of his debt, as well as housing and

employment – items he could not obtain in the course of bankruptcy proceedings or from other creditors. For these reasons, the court affirms the Bankruptcy Court's decision to deny summary judgment on the Trustee's motion for summary judgment.

### 2. The Bankruptcy Court's dismissal at trial.

The Trustee argues that the Bankruptcy Court erred by (1) ignoring the relationship between Agrawal and Debtor and (2) by finding that the Trustee did not present evidence proving Agrawal's control over Debtor. Appellant's Br. at 28. The court reviews Judge Rhodes' findings for clear error.

The Trustee has little support for the contention that the Bankruptcy Court ignored the relationship between Agrawal and Debtor. Judge Rhodes implicitly acknowledged the close relationship between the two. Hearing Transcript, Sept. 3, 2009 at 8-9. The real objection raised by the Trustee is that he believes the Bankruptcy Court erred by not focusing solely on the relationship, a theory that runs contrary to the persuasive standard set forth in In re Winstar Communications, Inc.

As stated near the outset of this opinion and order, the correct standard views the closeness of the relationship between Debtor and Creditor as a reason to scrutinize their transactions, and not as the single determinant of non-statutory insider status. See In re Winstar Communications, Inc., 554 F.3d at 396-97 (the court asks "whether there is a close relationship [between debtor and creditor] and . . . anything other than closeness to suggest that any transactions were not conducted at arm's length."); see also In re U.S. Medical, Inc., 531 F.3d at 1277 ("The inquiry is whether there is a close relationship and whether there is anything other than closeness to suggest that any transactions were not conducted

8

at arm's length."). Despite the Trustee's arguments to the contrary, the Bankruptcy Court correctly applied the standard to the facts before it.

The Trustee also argues that the Bankruptcy Court erred by finding that Agrawal did not exert some control over Debtor. At best, the argument for control is conclusory. The Trustee presents the facts of the case and opines that the only explanation is that these facts indicate "some level of control." See Appellant's Br. at 32. Unaddressed is the plausible conclusion that the same facts can be viewed objectively by Debtor as a deal too good to refuse. In reviewing the Bankruptcy Court's decision, this court cannot find clear error in Judge Rhodes' findings.

**B.      Michigan Uniform Fraudulent Transfer Act, MCL § 566.34**

The Trustee believes the transfers of Debtor's assets to Agrawal were fraudulent, pursuant to the Michigan Uniform Fraudulent Transfer Act, MCL § 566.34. He argues that the Bankruptcy Court clearly erred in finding that there was "virtually no evidence indicating that any of the badges of fraud exist." See Hearing Transcript, Sept. 3, 2009 at 13. Again, the court disagrees.

Michigan law provides that an actual intent to hinder, delay or defraud by the transferor must be proven by clear and convincing evidence. Al-Naimi v. Foodland Distributors, Inc., 2009 Mich. App. LEXIS 1246 at *4 (Mich. App. 2009). Actual intent can be inferred by certain badges of fraud. Coleman-Nichols v. Tixon Corp., 203 Mich. App. 645, 659 (1994). The badges are not conclusive evidence of fraud. They may be stronger or weaker depending on their nature and the number occurring in a given case. Id. at 659-60. The presence of one or more badges is not conclusive evidence of intentional fraud.

Id. The Bankruptcy Court maintains full discretion to determine whether actual fraud existed in this matter and to assign a particular weight to each badge of fraud as it sees fit. See Id. at 659.

Judge Rhodes placed primary emphasis on Agrawal's alleged insider status. In his opinion from the bench, Judge Rhodes describes Agrawal's insider status as "the main badge of fraud" argued by the Trustee. See Hearing Transcript, Sept. 3, 2009 at 13. As stated previously, the court agrees with Judge Rhodes that Agrawal was not a non-statutory insider and does not find clear error in the Bankruptcy Court's judgment on this issue. Less emphasis was placed on whether the transfer was substantially all of Debtor's assets. "[T]he Court concludes that this one badge alone is not indicative – sufficiently indicative of fraud in this case." Id. Such discretion is clearly reserved to the Bankruptcy Court, and this court will not interfere with it. Coleman-Nichols, 203 Mich. App. at 659.

The same holds true for the Bankruptcy Court's evaluation of pending litigation against Debtor. There was at least one other significant lawsuit pending against Debtor, Flagstar Bank's complaint for breach of contract seeking almost $14 million dollars in damages. Debtor also listed four other judgments against him. Given the Bankruptcy Court's focus on Agrawal's relationship with Debtor, and the obvious benefits to Debtor of their contractual agreement, this factor had little impact on the Bankruptcy Court's decision.

The Trustee failed to demonstrate a palpable defect in the Bankruptcy Court's reasoning. The choices made by Agrawal and Debtor appear to represent sound business judgments. These circumstances do not constitute clear and convincing evidence of fraud. See Al-Naimi v. Foodland Distributors, Inc., 2009 Mich. App. LEXIS 1246 at *4 (Mich. App.

2009).

**C. Debtor materially breached the agreements with Agrawal.**

The Trustee complains that the Bankruptcy Court erred in its determinations regarding the severability and executory nature of the Transfer Agreement, the Employment Agreement and the Addendum. In doing so, the Trustee turns a blind eye to the core issue of these agreements. It was Debtor who first breached his contractual obligations, and for that reason, Debtor should not be allowed to profit from that breach.

Judge Rhodes acknowledged this central issue in his September 3, 2009 opinion.

> "Finally and perhaps most importantly, the Court finds that Piccinini breached the contract first and for that reason, the trustee is not entitled to damages for the defendant's alleged breach of the employment agreement."

See Hearing Transcript, Sept. 3, 2009 at 23. Debtor's breach strikes at the heart of the KAAD transaction. Debtor violated the terms of the Employment Agreement and is precluded from recovering from Agrawal. In re Executive Technology Data Systems, 79 B.R. 276, 282 (Bankr. E.D. Mich 1987) ("Since it would offend basic principles of equity and mutuality of obligation to excuse performance by the debtor while compelling performance by the contracting creditor, Section 365 also prohibits a rejecting debtor from compelling the creditor to perform its executory obligations.")(citations omitted). As a general matter of contract law, Agrawal was entitled as a non-breaching party to suspend performance. See e.g. Enodis Corp. v. Wausau Insurance Co., 330 B.R. 226, 231-32 (Bankr., D. Ind. 2001)("It is an immutable principle of contract law that, in the face of a material breach of contract, the non-breaching party may suspend its performance.")

Both parties acknowledge that Debtor took on new, full-time employment with Walbridge Aldinger shortly after signing the agreements. It is undisputed that this employment left little, if any time for Debtor to fulfill his employment obligations to Agrawal. Debtor's expertise and knowledge of KAAD and its affairs was so central to the potential success of this transaction that it motivated Agrawal to forgive a significant portion of Debtor's loans from Agrawal. Whether these agreements were executory and/or severable does not change the outcome of this case given the material breach of the agreement by Debtor.

## **CONCLUSION**

For the reasons set forth above, the challenged opinions are hereby AFFIRMED.

Dated: March 8, 2010

          S/George Caram Steeh
          GEORGE CARAM STEEH
          UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 8, 2010, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---